UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| BRYAN QUIMBY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil No. 04-33-B-W |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

*RECOMMENDED DECISION ON PLAINTIFF'S MOTION FOR ATTORNEY FEES*

The plaintiff applies for an award of attorney fees pursuant to 42 U.S.C. § 406(b) after securing an award of past-due benefits before the commissioner following this court's remand of this Social Security Disability ("SSD") case. *See* Plaintiff's Motion for Award of § 406(b) Fees ("Motion") (Docket No. 16). I recommend that the Motion be granted, albeit in a lesser amount than requested and with the proviso that the plaintiff's counsel remit to his client a sum equal to the court's prior award of attorney fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.

### I. Factual and Procedural Background

On February 25, 2004, the plaintiff executed a contingent fee agreement with the law firm of Jackson & MacNichol in connection with his appeal to this court of the commissioner's adverse decision. *See* Contingent Fee Agreement for Representation Before the Court With the Law Firm of Jackson & MacNichol ("Fee Agreement") (Docket No. 18-2). The Fee Agreement provided, in relevant part: "Client agrees to pay a fee equal to twenty five percent (25%) of the

total amount of any past-due benefits awarded to Client, to include any dependents benefits, subject to the approval of said fee by the court." *Id.* ¶ 3(A).

On October 14, 2004, following the plaintiff's filing of a statement of errors, the commissioner filed an unopposed motion for remand, which the court granted, entering a judgment the following day vacating the adverse decision of the commissioner and remanding the case for further proceedings. *See* Docket Nos. 8, 10, 11 &12. On December 7, 2004, the court granted a consent motion for approval of a settlement agreement pursuant to which the plaintiff was awarded attorney fees in the amount of $3,760 under the EAJA. *See* Docket Nos. 14, 15.

The plaintiff prevailed on remand and was awarded $54,431.40 in past-due benefits. *See* Notice of Award (Docket No. 16-1), Exh. 1 to Motion, at 1-3; Procedural Order (Docket No. 23); Defendant's Response to the Court's Procedural Order ("Response to Procedural Order") (Docket No. 24) at [1]. In addition, the plaintiff's dependent prevailed on remand and was awarded $8,035 in past-due benefits. *See* Notice of Award (Docket No. 16-2), Exh. 2 to Motion, at 4; Response to Procedural Order at [1]. The plaintiff now seeks an award pursuant to section 406(b) of $16,510, which he states equals slightly less than 25 percent of the combined past-due benefits award. *See* Motion at [1]. However, his request is premised on a miscalculation of the sum of the combined past-due awards, which he calculates as totaling $66,484.25. *See id.* In fact, that sum totals $62,466.40, 25 percent of which is $15,616.60.[1]

---

[1] The plaintiff represents, and the commissioner concurs, that his counsel received no attorney-fee award pursuant to 42 U.S.C. § 406(a) for his work on his behalf at the administrative level. *See* Motion at [1]n.1, [4]; Defendant's Response to Plaintiff's Counsel's Motion for an Award of Attorney's Fees Pursuant to Section 206(b) of the Social Security Act, 42 U.S.C. § 406(b) ("Response") (Docket No. 21) at 2. Had such a fee been granted, it would have been taken into consideration in calculating the instant fee award. *See, e.g., Doucette v. Astrue*, Civil No. 07-178-P-S, 2009 WL 2824749, at *1 (D. Me. Aug. 27, 2009) (rec. dec., *aff'd* Sept. 16, 2009) (offsetting section 406(a) award in arriving at figure equaling 25 percent of claimant's past-due benefits award).

The plaintiff's counsel's statement of work performed in this court indicates that Jackson & MacNichol expended 25.5 hours of attorney time to obtain the remand order that eventually led to the plaintiff prevailing in further proceedings before the commissioner. *See* Invoice (Docket No. 16-4), Exh. 4 to Motion. The plaintiff's counsel submits no hourly billing rate in connection therewith, *see id*.; however, in seeking EAJA fees in 2004, he submitted an invoice containing an hourly billing rate of $160, resulting in a total claimed fee of $4,080, *see* Invoice (Docket No. 13-1). The plaintiff states in his memorandum of law that his counsel's EAJA rate today is approximately $170 per hour. *See* Motion at [5].

The plaintiff's counsel also submits an affidavit stating that his "usual and customary rate" is $395 per hour, that when he has applied for fees on an hourly basis in recent cases he has routinely been approved for fees at that hourly rate or more, and that the rate of $395 per hour is not unusual for a skilled Social Security practitioner of his age, with more than 30 years' legal experience. *See* Affidavit in Support of Motion for 406(b) Fees ("Affidavit") (Docket No. 16-6) ¶ 3. He adds that the rate that he charges in this court for his work in EAJA cases, ranging up to $175 per hour, is not reflective of normal market rates for him and does not represent his usual or customary rates, but rather reflects the cap placed on EAJA fees by Congress. *See id*. ¶ 4.

The plaintiff also submits a written statement in support of the grant of the requested fee award. *See* Docket No. 16-5, Exh. 5 to Motion. He states that he has been "very pleased" with his counsel's work, that his counsel "went through three hearings to finally get me a fully favorable decision in 2008[,]" and that he "want[s] him to be paid the full twenty five percent of my back benefits that we agreed on." *Id*.

## II. Discussion

Section 406 provides, in relevant part:

> Whenever a court renders a judgment favorable to a claimant under this subchapter [*i.e.*, Title II] who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment . . . .

42 U.S.C. § 406(b)(1)(A).

The court has authority to award court-related fees pursuant to section 406(b), even though the benefits award itself was made by the commissioner on remand. *See, e.g., Horenstein v. Secretary of Health & Human Servs.*, 35 F.3d 261, 262 (6th Cir. 1994) (overruling "single tribunal rule" of *Webb v. Richardson*, 472 F.2d 529 (6th Cir. 1972), pursuant to which only the tribunal that ultimately upheld a claim for benefits could approve and certify payment of section 406 attorney fees; joining majority of circuits – including First Circuit – in ruling, *inter alia*, that "in cases where the court remands the case back to the [commissioner] for further proceedings, the court will set the fee – limited to 25 percent of past-due benefits – for the work performed before it, and the [commissioner] will award whatever fee the [commissioner] deems reasonable for the work performed on remand and prior administrative proceedings.").

The making of an application for an award of attorney fees pursuant to the EAJA does not preclude an award of attorney fees pursuant to section 406(b). However, a claimant's attorney must refund the smaller of the EAJA fee or the section 406(b) fee to the claimant. *See, e.g., Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002) ("Congress harmonized fees payable by the Government under EAJA with fees payable under § 406(b) out of the claimant's past-due Social Security benefits in this manner: Fee awards may be made under both prescriptions, but the claimant's attorney must refund to the claimant the amount of the smaller fee.") (citation and internal punctuation omitted).

4

Because the money at stake in a section 406(b) request comes not out of the commissioner's pocket but rather that of the claimant, the court has an independent duty, even in the absence of an objection by the commissioner, to satisfy itself that a section 406(b) contingency fee is "reasonable[.]"  *See, e.g., id* at 807 ("Most plausibly read, . . . § 406(b) does not displace contingent fee arrangements as the primary means by which fees are set for successfully representing Social Security benefits claimants in court.  Rather, § 406(b) calls for court review of such arrangements as an independent check, to assure that they yield reasonable results in particular cases.  Congress has provided one boundary line:  Agreements are unenforceable to the extent that they provide for fees exceeding 25 percent of the past-due benefits.  Within the 25 percent boundary, . . . the attorney for the successful claimant must show that the fee sought is reasonable for the services rendered.") (citations and footnotes omitted).

As one might expect, the outer boundaries of a test of "reasonableness" are difficult to mark.  However, this much is clear: Reduction in the amount that otherwise would be payable pursuant to a contingent fee agreement between a claimant and attorney is appropriate to the extent that (i) counsel's conduct is improper or representation substandard; for example, an attorney is responsible for a delay that has caused an accumulation of past-due benefits, or (ii) the benefits are disproportionate in relation to the amount of time counsel spent on the case (thereby resulting in a windfall).  *See id*. at 808; *Rodriquez v. Bowen*, 865 F.2d 739, 746-47 (6th Cir. 1989) (*cited with favor in Gisbrecht*, 535 U.S. at 808).

There is no question in this case of substandard performance or improper conduct on the plaintiff's counsel's part.  To the contrary, the plaintiff's counsel secured a significant victory for his client, and the plaintiff is understandably very pleased with his performance.  Hence, I concern myself solely with whether the requested fee confers a windfall.

For purposes of addressing windfall concerns, this court has followed the precept that, "as a rule of thumb, a multiplier of two times a practitioner's usual and customary hourly rate provides adequate recompense for the taking of contingent fee risk without raising windfall concerns." *Ogle v. Barnhart*, No. 99-314-P-H, 2003 WL 22956419, at *6 (D. Me. Dec. 12, 2003) (rec. dec., *aff'd* Jan. 21, 2004). What this means, as a practical matter, is that requested fees falling within this multiplier are deemed reasonable, while requested fees exceeding it require analysis for windfall concerns and may or may not be judged reasonable depending on the circumstances of the individual case. This court has, for instance, approved a section 406(b) fee conferring an effective hourly fee of $498.56, nearly three times a practitioner's invoiced rate, for work performed in this court when the case involved a novel winning legal argument and counsel secured an excellent result. *See Quint v. Astrue*, Civil No. 05-135-B-W, 2008 WL 4905482, at *3 (D. Me. Nov. 12, 2008) (rec. dec., *aff'd* Dec. 4, 2008).[2]

The commissioner objects to the plaintiff's fee request on windfall grounds, arguing that (i) this court has made clear that the hourly rate to be used in calculating the reasonableness of a fee in a section 406(b) case is the EAJA billing rate, (ii) the requested fee equals about 3.8 times the plaintiff's counsel's stated average hourly EAJA rate of $170, and (iii) in line with this court's past section 406(b) decisions, the amount awarded should total no more than 2.5 times the EAJA billing rate. *See* Response at 3-4.[3] The plaintiff rejoins, *inter alia*, that:

---

[2] This court also recently approved a requested section 406(b) attorney fee of $17,505.85 for nine hours worth of work in this court, an effective hourly rate of $1,943.09. *See Bisson v. Astrue*, Civil No. 08-182-P-S, 2009 WL 3633231, at *2 (D. Me. Oct. 30, 2009) (rec. dec., *aff'd* Nov. 23, 2009). However, the circumstances of counsel's engagement and the result he obtained in that case were deemed "unique" given that counsel took the case at a time that it was deemed hopeless by prior counsel and achieved an excellent result, garnering not only approximately $80,000 in past-due benefits but also an expected additional $220,000 in ongoing benefits for the remainder of the claimant's life. *See id.*

[3] Because the commissioner has not challenged the time expended by the plaintiff's counsel on this matter, *compare, e.g.*, Recommended Decision on Plaintiff's Motion for Attorney Fees (Docket No. 21), slip op. at 6, *O'Brien v. Astrue*, Civil No. 07-34-P-H (D. Me. Feb. 15, 2010) (rec. dec.), and because I consider the aggregate amount of
*(continued on next page)*

1.    Since *Gisbrecht*, courts have been more inclined to honor attorney-client contingency fee agreements, particularly when, as here, counsel has secured an excellent result. *See* Plaintiff's Reply to the Commissioner's Comments in Opposition to Fees ("Reply") (Docket No. 22) at 2-3.  In this case, the plaintiff has written in support of award of his counsel's full fee request, noting that his counsel persisted through three post-remand hearings at the administrative level to secure a perfect result consisting of a full award of benefits dating back to 2002, an additional award for a dependent, and a valuable entitlement to ongoing benefits.  *See id.* at 1-2.  Courts recently have been willing to approve rates effectively conferring more than $1,000 per hour in cases in which skilled, efficient practitioners have achieved excellent results. *See id.* at 3-5.

2.    While his counsel has not, in the past, distinguished between capped EAJA rates and his usual and customary rates, he has done so in this case, justifying use of the rate of $395 hourly to test the reasonableness of the requested fee award. *See* Reply at 3-4.  In further support of the proposition that a $395 hourly rate is reasonable for an experienced Social Security practitioner, he appends to his reply brief copies of declarations of two attorneys licensed to practice in Georgia, submitted in support of petitions for section 406(b) awards, indicating that their standard hourly non-contingency fee rates ranged between $350 and $375 per hour. *See id.* at 6; Docket Nos. 22-1, 22-2.

3.    The requested fee, which the plaintiff calculates works out to a rate of $690 hourly, does not constitute a windfall in that it would confer less than two times his counsel's usual and customary hourly rate of $395.  *See* Motion at [5]-[6].  In addition, because counsel

---

time reasonable in the circumstances, I perceive no necessity to undertake, *sua sponte*, a line-item review in this instance.

would be obliged to remit the EAJA fee to the plaintiff, counsel's actual fee award would be less than 20 percent, notwithstanding the plaintiff's agreement to pay 25 percent.  *See* Reply at 5.

To the extent that the commissioner suggests that this court has held as a matter of law that attorneys' EAJA hourly rates must serve as the springboard for calculating the reasonableness of a fee request pursuant to section 406(b), he errs.  The door is open to claimants to prove that their attorneys' usual and customary rates exceed their EAJA billing rates.  Nonetheless, the plaintiff in this case fails to carry his burden of proof in this regard.

The plaintiff relies on an affidavit of his counsel, a specialist in disability cases, stating that when he has "applied for fees on an hourly basis in recent cases [he has] routinely been approved for fees at rates of $395.00 or more per hour based upon [his] age and over 30 years of experience."  Affidavit ¶ 3.  His counsel adds: "That rate is my *usual and customary rate* and is not unusual for a skilled social security practitioner of my age and with over 30 years of legal experience." *Id*. (emphasis in original).

In so averring, the plaintiff's counsel misapprehends the meaning, for purposes of the testing of the reasonableness of a section 406(b) fee request, of the phrase "usual and customary rate."  It is not the rate that a court is willing to approve, but rather the rate that a private client willingly would pay for comparable legal services in this community.  *See, e.g., Rataj v. Commissioner of Soc. Sec.*, No. 07-10565, 2009 WL 5171851, at *1 (E.D. Mich. Dec. 21, 2009) ("[A] contingency-based fee award is presumptively reasonable if the hypothetical hourly rate determined by dividing the number of hours worked for the claimant into the amount of the fee permitted under the contract is less than twice the standard rate for such work in the relevant market.") (citation and internal quotation marks omitted); *Acuna v. Astrue*, No. CV 04-08877(RZ), 2008 WL 3853537, at *2 (C.D. Cal. Aug. 19, 2008) ("*Gisbrecht* also instructs courts

to look at the lawyer's rates as an effective check on the reasonableness of the fee which the [contingency fee] contract would yield. . . . [T]he only purpose of looking at the rates must be to compare the requested fees, in some sense at least, to a market rate.").

Nor does the plaintiff's submission, with his reply brief, of copies of affidavits of two Georgia attorneys serve as persuasive evidence that a private client in a non-contingency case willingly would pay *his attorney* rates in the $350 to $375 hourly range.

Because the plaintiff falls short in this proof, I rely for purposes of calculating the reasonableness of the instant fee request, as did the commissioner, on the plaintiff's counsel's average EAJA hourly rate of $170. In addition, I adjust his requested fee amount to $15,616.60, which represents 25 percent of his and his dependent's combined past-due benefits awards and, accordingly, constitutes the maximum attorney fee awardable pursuant to section 406(b). *See Gisbrecht*, 535 U.S. at 807. If that full amount were awarded, it would represent compensation to the plaintiff's attorney for 25.5 hours of work in this court at an effective hourly rate of $612.42, approximately 3.6 times the average EAJA hourly rate of $170.[4]

This fee is unreasonably high. With the exception of the unique *Bisson* case, expressly limited to its facts, this court has never awarded a section 406(b) fee conferring a multiplier of more than three times the invoiced rate. Indeed, it has been comfortable awarding a fee that high only in cases in which the claimant has justified such an award, for example, on the basis of an excellent result achieved by way of a novel legal argument. *See, e.g., Quint*, 2008 WL 4905482, at *3. In this case, based on the plaintiff's written statement of his high satisfaction with his

---

[4] While it is true, as the plaintiff suggests, that remittance to him of the EAJA award of $3,760 effectively would result in his paying less than the agreed 25 percent contingency fee even if the full sum of $15,616.60 were awarded, that is beside the point. Pursuant to section 406(b), attorneys may not be awarded fees exceeding 25 percent of past-due benefits. *See Gisbrecht*, 535 U.S. at 807. If the plaintiff's counsel were permitted to retain the EAJA fee award and to receive the full sum of $15,616.60, his total fee would exceed 25 percent of past-due benefits.

attorney's work, his professed desire that his attorney be awarded the full contingency fee to which he agreed, and the fact that his attorney achieved an objectively excellent result after having persisted in obtaining three separate post-remand hearings at the administrative level, I conclude that the plaintiff has justified an award in the sum of three times the current EAJA rate, or $510 hourly, but not more. This amount totals $13,005 ($510 times 25.5).

### III. Conclusion

For the foregoing reasons, I recommend that the Motion be **GRANTED**, albeit in a lesser amount than requested, resulting in an attorney fee award pursuant to 42 U.S.C. § 406(b) of $13,005, provided that the plaintiff's counsel be directed to remit to his client the sum of $3,760 previously awarded in EAJA fees.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 4th day of March, 2010.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge